CA 07 449 ML

PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| | |
|---|---|
| United States District Court | District |
| Name (under which you were convicted): Clarence E. Spivey Pro-Se | Docket or Case No.: |
| Place of Confinement: POB 8273 Cranston, RI 02920 | Prisoner No.: 55065 |
| Petitioner (include the name under which you were convicted) Clarence E. Spivey Pro-Se | v. Respondent (authorized person having custody of petitioner) A.T. Wall et al. |
| The Attorney General of the State of Rhode Island | |

PETITION

1. (a) Name and location of court that entered the judgment of conviction you are challenging: Providence Superior Court, 250 Benefit Street, Providence, Rhode Island 02903

(b) Criminal docket or case number (if you know): 72-115; 72-116; 72-117; 72-118

2. (a) Date of the judgment of conviction (if you know): November 2, 1973

(b) Date of sentencing: January 8, 1973

3. Length of sentence: 55 years

4. In this case, were you convicted on more than one count or of more than one crime? Yes ☑ No ☐

5. Identify all crimes of which you were convicted and sentenced in this case: Rape, Kidnapping, two(2) assaults

6. (a) What was your plea? (Check one)

(1) Not guilty ☑ (3) Nolo contendere (no contest) ☐

(2) Guilty ☐ (4) Insanity plea ☐

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to?

(c) If you went to trial, what kind of trial did you have? (Check one)

Jury ☑ Judge only ☐

7. Did you testify at a pretrial hearing, trial, or a post-trial hearing?

Yes ☑ No ☐

8. Did you appeal from the judgment of conviction?

Yes ☑ No ☐

9. If you did appeal, answer the following:

(a) Name of court: Rhode Island Supreme Court

(b) Docket or case number (if you know): UNKNOWN

(c) Result: Appeal denied

(d) Date of result (if you know): November 22, 1974

(e) Citation to the case (if you know): No. 73-75-C. A.

(f) Grounds raised: On direct appeal, only two issues were raised: The age of the jury members, and the fact that there was no black people on the Jury

(g) Did you seek further review by a higher state court? Yes ☐ No ☑

If yes, answer the following:

(1) Name of court:

(2) Docket or case number (if you know):

(3) Result:

(4) Date of result (if you know):

(5) Citation to the case (if you know):

(6) Grounds raised:

(h) Did you file a petition for certiorari in the United States Supreme Court? Yes ☐ No ☑

If yes, answer the following:

(1) Docket or case number (if you know): NA (NON-APPLICABLE)

(2) Result: N.A

(3) Date of result (if you know): N.A

(4) Citation to the case (if you know): N.A

10. Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?

Yes ☑ No ☐

11. If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of court: Providence Superior Court

(2) Docket or case number (if you know):

(3) Date of filing (if you know):

(4) Nature of the proceeding: Post-conviction relief

(5) Grounds raised: No indictments were filed by the state or returned by a grand jury; Newly discovered evidence and ineffective assistance of counsel

(6) Did you receive a hearing where evidence was given on your petition, application, or motion? Yes ☑ No ☐

(7) Result: Application for Post-Conviction Relief denied

(8) Date of result (if you know):

(b) If you filed any second petition, application, or motion, give the same information:

(1) Name of court: Rhode Island Supreme Court

(2) Docket or case number (if you know):

(3) Date of filing (if you know):

(4) Nature of the proceeding: Appeal from denial of post- conviction

(5) Grounds raised: No indictments were filed by the Attorney General's Office or returned by a grand jury; Newly discovered evidence; and Ineffective Assistance of Counsel.

(6) Did you receive a hearing where evidence was given on your petition, application, or motion? Yes ☑ No ☐

(7) Result: Appeal was denied

(8) Date of result (if you know): November 16, 1999

(c) If you filed any third petition, application, or motion, give the same information: **N/A**

(1) Name of court: NON-Applicable

(2) Docket or case number (if you know): N/A

(3) Date of filing (if you know): N/A

(4) Nature of the proceeding: N/A

(5) Grounds raised: N/A

(6) Did you receive a hearing where evidence was given on your petition, application, or motion? Yes ☐ No ☐

(7) Result: N/A

(8) Date of result (if you know): N/A

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1) First petition: Yes ☐ No ☐

(2) Second petition: Yes ☐ No ☐

(3) Third petition: Yes ☐ No ☐

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

N/A

12. For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

GROUND ONE: ACCTUAL INNOCENCE. * SEE: GROUNDS AND SUPPORTING FACTS ATTACHED TO ADDITIONAL PAGES 6, 13-State Remedies Exhausted

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

(b) If you did not exhaust your state remedies on Ground One, explain why:

(c) Direct Appeal of Ground One:

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☑ No ☐

(2) If you did not raise this issue in your direct appeal, explain why:

(d) Post-Conviction Proceedings:

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court? Yes ☐ No ☐

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

**GROUND:** **One**

**GROUNDS:** **ACTUAL INNOCENCE.**

**SUPPORTING FACTS:** On January 15, 1972, at approx. 7:05 pm, a woman was abducted and dragged away from St. Josephs Hospital parking lot as she was leaving work. Two people witnessed the event, and despite their efforts, they were unable to help her due to what one of them described as a knife. The police took immediate action and ran a broadcast of the assailants description. He was about 5'8" or 5'9" tall, wearing dark cloths and a green hat.

The victim had been beaten about the face and body repeatedly, and she was raped twice in a period of an hour and a half, in an abandoned house, which she pointed out to the police. (1). The victim claimed she never got a good look at the suspects face, and that (2). The assailant had **remained clothed** during the attacks. (3). The victim was **covered with blood** and had been **bitten** on the right wrist, and that (4). Photo's were taken clearly showing **teeth marks**. (5). The victim also stated that her assailant had **vomited** in the abandoned house where she was raped.

The crime scene was secured, evidence gathered, including **vomit, fingerprints**, etcetera. The victim's pubic hair was combed for evidence, and standard rape procedures were conducted. At approx. 8:35 pm, the police spotted another woman struggling with a man fitting **the suspect's** description in a vacant parking lot. The suspect fled, and the police broadcast the **same description** again. A short time later the petitioner was arrested while just walking up the street. The police broadcasted while the petitioner was **on the ground** that the suspect was wearing a **green hat.** As the petitioner laid on the ground with the detective, a police wagon **came to the scene,** and told them that the

suspect they had just arrested, ( this petitioner ), **didn't fit the description** of the suspect, and this petitioner also **wasn't wearing dark clothes.**

The petitioner was still taken to the Providence Police station where he was fingerprinted and photographed. All the petitioners **clothing and shoes were confiscated.** The petitioners fingernails were scraped, and hair samples were taken. The petitioners body was visually inspected, and they **chemically tested** his arms, chest torso, penis, and hands for the presense of blood. ( All body and chemical test were negative ). Then, while the petitioner was hand-cuffed to the **cell bars, alone, naked and in the standing pos-ition,** the police **suggestively** brought witness Charles Slack in to view the petitioner. Mr. Slack looked at the petitioner and **without answering any** of the officers questions, walked out. The following morning the petitioner was given a formal line-up, at which time Mr. Slack **wrongfully** identified this petitioner. At trial, the other witness (Charles Salsbery ), who was with Mr. Slack, testified that the petitioner was in fact, **not the suspect.**

The petitioner was taken to the ACI and ordered to give **sperm and teeth mark samples.** Without refusing, in order to help prove his innocence, the petitioner complied with the order.

On Febuary 7, 1972, the FBI in Washington, DC sent its lab report to Captain Fredrick O'Connell at the Providence Police Dept. which stated that (1). There was no presense of blood or fibers of the victims on any of the petitioners clothing or shoes that had been confiscated by the police. (2). The victims clothing was examined and none of the fibers matched the petitioners. (3). There was no transfer of any textile fibers from the victims cloth-ing to the petitioners clothing. ( **The victim was found covered in blood, and she stated that the assailant had never taken off his clothing while he repeatedly raped the victim over a period of nearly two hours). (4).** There were no pubic hairs from the victim found on the petitioner. (5) There were no pubic hairs from the petitioner found on the victim, or her clothing. (6). The fingernail scrapings revealed no fibers, skin, or the pre-

sense of any of the victims blood. (7) The petitioners **sperm** didn't match anything **in the victim, or on the victims clothing.** (9). The suspects green **knit hat** was found in the vacant house where the rapes took place. (10). None of the hair fiber samples found on the hat matched anything on, or in the petitioners clothing.

All FBI lab reports and test results were **deliberately withheld** from exculpatory evidence, and kept from the court and the juries knowledge. ( Brady Violation ). It was also confirmed by both the Rhode Island Hospital, and the ACI, that the petitioner unfortunately, or in this case, fortunately, had Syphilis at the time of the assaults. Yet, the victim showed **no trace,** nor did she contract Syphilis at any time after the assaults.

It should also be noted that shockingly, the state **unlawfully tried** this case againts the petitioner without the benefit, or the presenting of **any of the facts of this case** to a Grand Jury for a lawful indictment. During the **lynching,** or trial the pet-itioner received. Both the victim, and the doctor who examined the victim, and both the witnesses who witnessed the abduction, all testified that they were **never called** to testify before a Grand Jury in Rhode Island.

The state cannot produce any **true Grand Jury** minutes or tran-scripts for the wrongful and malicious charges the petitioner was tried for, because they never existed. This case is indeed an **extraordinary and total miscarriage of justice.** ( See Murray v. Carrier, 477, U.S., 478 ).

**THE GATEWAY TO ACTUAL INNOCENCE**

Schulp v. Delo, 513 U.S. 298, and Sawyer v. Whitley, 605 U.S. 333. House v. Bell U.S. 386 F3d, 668.

On October 7, 1975, 3 **years after** the petitioners unlawful and

wrongful conviction, this petitioner, who is indeed **actually innocent** of this charge, found out that without notice to the petitioners counsel, the state, in a motion granted the same day, withdrew all physical evidence used to convict this petitioner.

Then, in a letter dated October 20, 1975, the assistant Attorney General, who was then in fact Albert DeRobbio, **notified,** Alton Reilly, who was at that time a Public Defender, that **Federal FBI agents** had met with him, ( Albert DeRobio ), and told him that the FBI agent **whom the state used at this petitioners trial** ( Thomas Curran ) and knowingly presented his perjured testimony, ( see Constitutional Law Key 266(6), was in fact; (1). **No longer with the FBI. (2). Had been the subject of an internal Investigation** into his conduct of **scientific examinations** of evidence.
(3) Had, in at least one case already discovered, given false reports of test results on other examinations that he had in fact never conducted, and had subsequently lied under oath in an affidavit regarding the same. (4) Agent Curran also falsely testified that he had a Masters Degree in science and zoology, when neither was in fact true. (5) The state refused the FBI's offer to retest all evidence.

Then, as if that wasn't enough, the Assistant U.S. Attorney William Dimitri, Jr. **wrongfully** advised the FBI that, " there is no doubt in his mind that this petitioner is guilty of the crimes charged, and a conviction would have been obtained even without Agent Curran's testimony. William Dimitri also, wrongfully, further stated that the problem that presented itself by the FBI's " disclosure regarding agent Curran ", is an ethical one regarding whether the presiding judge, and the defense attorney should be advised of curran's behavior."

The petitioner humbly and very respectfully contends that it most certainly is not an ethical one regarding whether the presiding judge, and the defense attorney should be advised of agent Curran's

behavior. The state was advised, yet still remained bent on lynching a black man, regardless of whether he was in fact innocent, or guilty, because a white woman was raped on January 15, 1972. Then, everyone else that this petitioner has told this miscarriage of justice to for the past 35 years, wouldn't do anything because of all the high powered, and political names involved. Knowing the eventual federal law suit that follows a wrongful conviction and actual innocence case like the petitioners. They knowingly counted on the petitioners ignorance, and everyone I told joined in concert, and deliberately failed to raise my issues at every stage of my relief seeking process.

(1). They deliberately failed to expose that there was no Grand Jury indictment. (2). They failed to file a motion for a new trial because of the states deliberate nondisclosure of material exculpatory evidence. ( the FBI lab reports, which were all neg ative ). (3). They failed to file the proper issues on direct appeal. (4). They even failed to raise the Brady Violation on Post-Conviction.

These are not ineffective cliams, they are deliberate political cover up's for the high powered (named) people involved in this case, who are; <u>Albert E. DeRobbio</u>, <u>William Demitri</u>, <u>Jr</u> and <u>William Reilly</u>. Their calculated acts (supterfuge and colusion) with the ill intent of procedurally barring all petitioners valid cliams, by covering up there merit with the antiterrorism, and effective death penality act of 1996

All of this collectively resulted in, leaving this petitioner, who is in fact, actually innocent of this charge, held in custody illegally for what amounts to the past 35 years, so the high powered judicial, legal, and political names involved can keep their record clean from the shocking, wrongful, miscarriage of justice the petitioner has been subjected to. This case is indeed an extraordinary case, and the fact still remains the same. The petitioner is actually innocent, and the jury had every right to hear and

know everyhing in the F.B.I. report about Agent Curran. who in fact, lied during petitioners trial, and falsely told the jury that he had found blood from the victim on the petitioners clothing, when in fact, there was no blood found on petitioners cloths, and every other test coducted was negative. The Attorney General's office deliberately witheld the F.B.I. reort, which completely exhonorated the petitioner, in violation of petitioners 14th amendment right to a fair trial. Augmenting that, the state knowingly presented agent Curran's perjured testimony about his credentials, and failed to correct it before the court. The petitioner did not find this information until 3 years after petitioners trial, when the state notified petitioners counsel William Reilly, who was then in fact the boss of the Public Defenders Office. The state refused the F.B.I.'s offer to retest all the physical evidence that it's key witness, agent Curran, lied about, and all the states evidence has **mysteriously disapeared**. The Chief Justice Weisberger stated to petitioners attorney on Nov 2, 1999 in the hearing at petitioners appeal. " That from the states brief and the petitioners brief, they both pointed out that neither the Rhode Island Attorney General's office or the clerk's office of the Providence Superior Court, can find the transcripts to the states case, and if this case is sent back to the Superior Court for a new trial, the Superior Court would have to throw this case out. Instead, the Rhode Island Supreme Court **deliberately** denied petitioners appeal, leaving petitioner no hope of proving his innocents, until petitioner read **House v. Bell** ( **No. 04-8990** ) **386 F. 3d 688**. another actual innocence, case which states,

> **" To implement the general principal that comity and finality must yield to the imperative of correcting a fundamentally unjust incarceration,"citing Murray V. Carrier, 477 U.S. 478, this court ruled that prisoners asserting innocence as gateway to defaulted claims, must establish that, in light of new evidence, it is more likely than not that no reasonable jury would have found the petitioner guilty behond a reasonable doubt." Schlup,513 U.S. at 327. Several features of Schlup's bear emphasis here. First, while the gateway claim requires " New reliable evidence... not pre-**

sented at trial", Id at 324, the Habeas Court,. must assess the likely impact of " all the evidence, on reasonable jurors, Id, at 329. Second, rather than requiring absolute certainty about guilt or innocence, a petitioners burden at the gateway stage is to demonstrate that more likely than not, in light of new evidence, no reasonable juror would find him guilty behond a reasonable doubt. "

Finally, this standard is by no means equivilent to the standard of Jackson v. Virginia, 443 U.S. 307, which governs insufficient evidence claims, Id, at 630. Rather, because a Schlup claim involves (evidence) the trial jury did not have before it, the inquiry requires the federal court to assess how reasonable jurors would react to the overall newly supplemented record. See House v. Bell 386, F3d. 668.

The petitioners case squarely fits into the gateway of actual innocence. The newly reliable evidence which the jury did not get to hear came from the FBI about their own agent, (Thomas Curran) who lied at the petitioners trial and told the court and the jury that he found blood from the victim on this petitioners clothing. Which this petitioner knew was a bold faced lie, because this petitioner never raped this young woman, or any woman, nor had he ever seen her before in his life. The FBI report which the state deliberately withheld from exculpatory evidence until 3 years after the petitioners trial, came back negative on all test results. Out of the two men who saw the victim being raped, Charles Slack, and Charles Salisbery, Mr. Salisbery who didn't suggestively see this petitioner wrongfully handcuffed naked, in the standing position, to a jail cell, told the court and jury that the petitioner was not in fact the suspect. It was Agent Curran's false testimony and the states deliberate nondisclosure of material exculpatory evidence ( the FBI report and negative lab test ) that led the jury into the wrongful conviction of this innocent petitioner 31 years ago, who was doing nothing but walking up

Chester Ave. on his way home from his part time job at the Praire Ave, drop in center, when the petitoner was wrongfully arrested 3 houses away from his mother's house on Chester Ave.

Wherefore, the petitoner humbly prays for federal Habeas Corpus relief. All the facts of this case have been featured on the CAUGHT IN PROVIDENCE website, for more than [ 6.] years, see exhibit ONE (1), attached to this petition. **Sadly and shockingly**, no one has offered to help, more than likely because of all the high powered, legal, judicial, and political names involved. **The petitioner is actually innocent of this charge**, and nothing anyone can ever say or do will ever change that.

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy of any court opinion or order, if available.

NON-Applicable

15. Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging? Yes ☐ No ☑

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

16. Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing: Public Defender's Office

(b) At arraignment and plea: Public Defender's Office

(c) At trial: Mr. William Reilly and Mr. Alton Wielly

(d) At sentencing: Mr. William Reilly and Mr. Altom Wielly

(e) On appeal: Mr. Walter Stone

(f) In any post-conviction proceeding: Pro-Se

(g) On appeal from any ruling against you in a post-conviction proceeding: Mr. Casby Harrison

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging? Yes ☑ No ☐

(a) If so, give name and location of court that imposed the other sentence you will serve in the future: Providence Superior Court, 250 Benefit Street, Providence R.I. 02903

(b) Give the date the other sentence was imposed: March 12, 1974

(c) Give the length of the other sentence: Four Years

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future? Yes ☐ No ☐

18. TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.* This is an actual innocense case. Petitioner's who are actually innocent are not barred from Federal Habeas corpus relief. They are the exception to the anti-terrorism and effective death penality act of 1996. see House Vs. Bell 386 F.3d. 688

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

(1) A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of —

(continued...)

Therefore, petitioner asks that the Court grant the following relief: Vacate sentence and order the petitioner to be immediately released.

or any other relief to which petitioner may be entitled.

Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on 11-30-2007 (month, date, year).

Executed (signed) on 11-30-2007 (date).

Clarence E. Spivey Pro_Se
Signature of Petitioner

*(...continued)
(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;
(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.